**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

DENNIS O'CONNOR
*and all those similarly*
*situated,*

              *Plaintiff,*

*v.*

RACHEL EUBANKS,
TERRY STANTON, and
STATE OF MICHIGAN,

              *Defendants.*

_____/

CASE NO. 1:21-cv-12837

DISTRICT JUDGE NANCY G. EDMUNDS
MAGISTRATE JUDGE PATRICIA T. MORRIS

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS (ECF No. 9)

### I.    Recommendation

For the reasons below, **I RECOMMEND** that Defendants' Second Motion to Dismiss (ECF No. 9) be **GRANTED** and that Defendants' original Motion to Dismiss (ECF No. 3) be **DENIED as MOOT**.[1]

### II.    Report

#### A.    Introduction

---

[1] Plaintiff filed his first Amended Complaint as a matter of right two days after Defendants filed their motion to dismiss. Fed. R. Civ. P. 15(a)(1)(B). "'Once an amended pleading is interposed, the original pleading no longer performs any function in the case and any subsequent motion made by an opposing party should be directed at the amended pleading.'" *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 617 (6th Cir. 2014) (quoting 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1476 (3d ed. 2010)). The "original complaint . . . is a nullity, because an amended complaint supercedes all prior complaints." *Id.* (internal citations omitted).

This case involves Plaintiff's claim under Michigan's Uniform Unclaimed Property Act ("UUPA"), M.C.L. § 567.221 *et seq.,* which "provides a mechanism by which the state may hold certain unclaimed property in trust for the benefit of the rightful owner." *Flint Cold Storage v. Dep't. of Treasury*, 285 Mich. App. 483, 492, 776 N.W.2d 387, 393, 2009 WL 2878015 (2009). "The UUPA applies to both tangible and intangible property that is in the possession of a holder." *Id.* (internal quotes omitted). Under the Act, the "property" includes "tangible" personal property. § 567.222(p). (October 6, 2016). "'Owner' means a depositor, in the case of a deposit; a beneficiary, in case of a trust other than a deposit in trust; [and] a creditor, claimant, or payee." § 567.222(n). An individual "claiming an interest in any property paid or delivered to the administrator under this act, may file with the administrator a claim on a form prescribed by the administrator and verified by the claimant." § 567.245(1). The state treasurer "shall consider each claim within 90 days after it is filed and give written notice to the claimant if the claim is denied in whole or in part." § 567.245(2).

### B.   Background

Plaintiff Dennis O'Connor filed a "Class Action Complaint" on December 3, 2021 under 42 U.S.C. § 1983 against the State of Michigan "as a state sovereign" and Rachael Eubanks administrator of Michigan's Unclaimed Property Program ("UPP") and Terry Stanton, UPP's administrative manager, in their personal capacities. (ECF No. 1, PageID.1).

The Amended Complaint, filed February 3, 2022, states as follows. Plaintiff had two monetary assets turned over to the UPP by FMC Corporation ("FMC") and Michigan

Millers Mutual Insurance Company ("Millers") valued between $100 and $250 and less than $100 respectively.[2]  (ECF No. 5, PageID.57, ¶ 42).  Plaintiff alleges that the interest generated on the principal while the property was in the custody of the UPP was improperly "seized and taken for a public use without notice." (*Id*., ¶ 43(a)).  He alleges alternatively that the principal on the property was taken for "public use without notice" and that under the State's "Ponzi scheme," more recently received unclaimed property is being used to reimburse individuals seeking to claim the property.  (*Id*. at PageID.57-58, ¶ 43(b)).  He asks that "his money – both principal and interest – [be] returned to him." (*Id*. at PageID.5, ¶ 44) (underscore in original).

Plaintiff proposes two possible classes: (1) the individuals or entities entitled to interest on the unclaimed funds, and (2) individuals or entities "who have had their property assets seized and spent" while the funds were in the custody of the UPP.  (*Id*. at PageID.58, ¶ 46(a)(b)).  He claims violations of the Takings Clause of the Fifth Amendment as to both interest and principal on the funds by the State of Michigan, Eubanks, and Stanton as well as violations of the Fourteenth Amendment Due Process Clause against all three Defendants.  (*Id*. at PageID.59-67).  Plaintiff requests monetary damages against all three Defendants on behalf of himself and the prospective classes.  (*Id*. at PageID.68).

### C.    Standard of Review

---

[2] Plaintiff states that unclaimed property, as a rule could include interest-bearing accounts, (ECF No. 5, PageID.53, ¶8) but does not allege that any of his own funds were held in interest-bearing accounts prior to being held by the UPP.

Defendants move to dismiss Plaintiff's Amended Complaint under Federal Rule of Civil Procedure 12(b)(1) on the basis of lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim.

Sovereign immunity is a jurisdictional issue and is therefore properly considered under Rule 12(b)(1). *See Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015). Further, the sovereign immunity issue, under Rule 12(b)(1), must be addressed first because "the Rule 12(b)(6) challenge becomes moot if this court lacks subject matter jurisdiction." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

Under Rule 12(b)(1) a defendant may move to dismiss a complaint on the grounds that the district court lacks subject matter jurisdiction. Where subject matter jurisdiction is challenged under Rule 12(b)(1), it is the plaintiff's burden to prove that the district court has jurisdiction. *See id.* The court will accept the complaint's factual allegations as true insofar as the defendant facially challenges the "sufficiency of the pleading" itself. *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). However, the complaint's factual allegations are not presumptively true where there is a factual controversy. Instead, the court must "weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist." In this case, Defendants facially challenge this Court's jurisdiction with respect to Plaintiff's official capacity claims for monetary damages because there are no material factual disputes which would affect subject matter jurisdiction.

Under Rule 12(b)(6), a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Accordingly, a plaintiff's complaint shall be dismissed for failure to state a claim if it lacks sufficient "factual matter (taken as true) to" provide "plausible grounds to infer" that the elements of a claim for relief could be met. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *see* Fed. R. Civ. P. 12(b)(6). A complaint must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Mere labels, conclusory statements, or "formulaic recitations" of the elements of a cause of action are not sufficient to meet this burden if they are unsupported by adequate factual allegations. *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The requirement to provide a plausible claim does not require that a claim be "probable"; however, a claim must be more than merely "conceivable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–80 (2009).

## D.   Analysis[3]

### 1.   Sovereign Immunity

Defendants argue that the claims for monetary damages against the State and damages against Eubanks and Stanton that would be paid from the State treasury are barred by the Eleventh Amendment. (ECF No. 9, PageID.134) (citing *Edelman v. Jordan*, 415 U.S. 651, 662–63, 673 (1974)).

---

[3] On February 22, 2022, Plaintiff filed a motion to exclude the exhibits attached to Defendants' Motion to Dismiss. (ECF No. 14). The Court does not rely on, much less cite any of the disputed exhibits in concluding that the Amended Complaint should be dismissed. The motion to exclude the exhibits is addressed in a separate motion filed concurrently with the Report and Recommendation.

In response, Plaintiff concedes that his theory that he is entitled to damages against the State "has been unwelcomed by the Sixth Circuit." (ECF No. 13. PageID.211-12). He argues that the issue of whether he is entitled to such damages should be preserved "for review by an en banc panel" of the Sixth Circuit. (*Id*.). As to Defendants' argument that the claims against Eubanks and Stanton should be barred insofar as they seek funds from the State treasury, Plaintiff states that the individual Defendants were sued only in their personal capacities; thus, the claims against them are not barred by Eleventh Amendment immunity. (*Id*. at PageID.213, n.12). In reply, Defendants note that Plaintiff's response "concedes that the State is entitled to sovereign immunity." (ECF No. 18, PageID.261)

The Eleventh Amendment to the United States Constitution provides that no citizen of the United States shall commence a suit against any state. U.S. Const. amend. XI.; *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974). It is well settled that "the States' sovereign immunity protects them from takings claims for damages in federal court." *Ladd v. Marchbanks*, 971 F.3d 574, 578, 2020 WL 4882885 (6th Cir. 2020) (citing *DLX, Inc. v. Kentucky*, 381 F.3d 511, 526 (6th Cir. 2004) *overruled on other grounds by San Remo Hotel, L.P. v. City and County of San Francisco*, 545 U.S. 323, (2005). Because Plaintiff requests only monetary damages, the exception to Eleventh Amendment immunity set forth in *Ex parte Young*, 209 U.S. 123, 148 (1908), permitting suits against states for prospective injunctive relief, does not apply.

Plaintiff concedes that this Court "cannot overrule" the binding precedent set forth in *DLX, Inc.*. but has duly preserved the issue for review by the Sixth Circuit. (ECF No. 13, PageID.212). Likewise, Plaintiff concedes that under *Ladd,* claims seeking monetary

damages against agents of the state in their official capacities are also barred.  *Id.* at 581 (Where "'the state is the real, substantial party in interest, as when the judgment sought would expend itself on the public treasury or domain, or interfere with public administration, the state's sovereign immunity extends to protect its officers from suit.'") (quoting *Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011)) (internal citations omitted).  Accordingly, under the Eleventh Amendment, this Court lacks subject matter jurisdiction over both the claims for monetary damages against the State of Michigan and insofar as the Amended Complaint could be construed to state official capacity claims against Eubanks and Stanton.[4]

## 2.     Qualified Immunity

Defendants also argue that Eubanks and Stanton are entitled to qualified immunity on the Fifth Amendment Takings Clause and Fourteenth Amendment Due Process Clause claims.  (ECF No. 9, PageID.137).   They contend that Plaintiff does not have a property right to interest because the accounts in question were non-interest-bearing at the time they were turned over to the UPP, noting the constitutional right to interest on non-interest-bearing accounts is not clearly established by either Supreme Court or Sixth Circuit caselaw.  (*Id.* at PageID.138-39).   In response, Plaintiff argues that the deprivation of interest on the accounts held by the State constitutes a violation of the Due Process Clause of the Fourteenth Amendment and that the unlawfulness of the individual Defendants' actions is "apparent" under pre-existing law.  (*Id.* at PageID.214) (citing *Hope v. Pelzer*,

---

[4] Again, Plaintiff has stated that he seeks damages against Eubanks and Stanton in their personal capacities only.  (ECF No. 13, PageID.213, n.12).

536 U.S. 730, 739 (2002)).   In reply, Defendants note that M.C.L. § 567.245(3) (December 30, 1997) makes a distinction between interest-bearing and non-interest-bearing property and that no court has found the statute's provisions unconstitutional.   (ECF No. 18, PageID.263).   They reiterate that even assuming that a constitutional violation occurred, the right is not clearly established.   (*Id*. at PageID.264).

A state official is protected by qualified immunity unless the plaintiff shows (1) that the defendant violated a constitutional right, and (2) the right was clearly established to the extent that a reasonable person in the defendant's position would know that the conduct complained of was unlawful.   *Saucier v. Katz,* 533 U.S. 194 (2001). Under *Saucier,* the inquiry was sequential, requiring the district court to first consider whether there was a constitutional violation. However, in *Pearson v. Callahan,* 555 U.S. 223 (2009), the Supreme Court held that the two-step sequential analysis set forth in *Saucier* is no longer mandatory. Rather, *Pearson* commends the order of inquiry to the judge's discretion, to be exercised on a case-by-case basis:

> "On reconsidering the procedure required in *Saucier,* we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."

*Id.* at 236.  In this case, the question of whether the constitutional right that the Defendants are accused of violating was clearly established will be considered first. The right in question, however, cannot be a generalized right. "It must be clearly established in a 'particularized' sense, so that 'the contours of the right' are clear enough for any reasonable

official in the defendants' position to know that what the official is doing violates that right." *Danese v. Asman,* 875 F.2d 1239, 1242 (6th Cir.1989) (citations omitted). *See also Myers v. Potter,* 422 F.3d 347, 356 (6th Cir.2005) ("[W]e do not assess the right violated at a high level of generality, but instead, we must determine whether the right [is] 'clearly established' in a more particularized ... sense"); *Martin v. Heideman,* 106 F.3d 1308, 1312 (6th Cir.1997) ("Because most legal rights are 'clearly established' at some level of generality, immunity would be impossible to obtain if a plaintiff were required only to cite an abstract legal principle that an official had 'clearly' violated.").

"A right is 'clearly established' if '[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Baynes v. Cleland*, 799 F.3d 600, 610 (6th Cir. 2015) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). In other words, the official must have "fair warning" that the act in question violates the constitution. *Baynes*, at 612-13.

In determining whether a particular constitutional right is clearly established, this Court must "look first to decisions of the Supreme Court, then to decisions of [the Sixth Circuit], and finally to decisions of other courts." *Sallier v. Brooks,* 343 F.3d 868, 878 (6th Cir. 2003). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011).

Here, the right that Plaintiff claims under both the Fifth Amendment Takings Clause and the Fourteenth Amendment Due Process Clause is the right of an individual to receive payment of interest on unclaimed funds that have transferred to the State, notwithstanding

a statute that limits payment of interest.  Taking the Amended Complaint's allegations as true, Eubanks and Stanton were discharging their statutory duties.

M.C.L. § 567.245(3) provides that interest is payable on previously unclaimed funds only if they were interest-bearing to the owner on the date the funds were turned over to the State:

> (3) If a claim is allowed, the administrator shall pay over or deliver to the claimant the property or the amount the administrator actually received or the net proceeds if it has been sold by the administrator, plus any additional amount required by section 22. *If the property claimed was interest bearing to the owner on the date of surrender by the holder… the administrator also shall pay interest* at a rate of 6% a year or any lesser rate the property earned while in the possession of the holder. Interest begins to accrue when the interest bearing property is delivered to the administrator and ceases on the earlier of the expiration of 10 years after delivery or the date on which payment is made to the owner.

(Emphasis added).

Under M.C.L § 567.244(1) (December 23, 2013), unclaimed funds that are surrendered to the state are deposited in the state's general fund.  The administrator is then statutorily directed to maintain a separate trust account of not less than $100,000, from which claims under the Act are paid:

> Sec. 24. (1) Except as otherwise provided by this section, *the administrator shall* promptly deposit in the general fund of this state all funds received under this act, including the proceeds from the sale of abandoned property under section 23. *The administrator shall* retain in a separate trust fund an amount not less than $100,000.00 from which prompt payment of claims allowed under this act shall be made. When making the deposit, *the administrator shall* record the name and last known address of each person appearing from the holders' reports to be entitled to the property and the name and last known address of each insured person or annuitant and beneficiary and with respect to each policy or contract listed in the report of an insurance company, the number of the policy or contract, the name of the insurance company, and the amount due.

(Emphasis added).  In this case, Plaintiff has attached to the Amended Complaint an affidavit from Bruce Hanses, an administrator with the Michigan Department of Treasury, affirmatively stating that the trust fund account established under M.C.L. § 567.244 is a non-interest-bearing account. (ECF No. 5-1, PageID.71, ¶¶ 3-4).  In addition, it is important to note that money is fungible, and because an amount of money equal to the funds claimed (in this case well under $100,000) is in the trust fund account, identified by the name and last known address of the person entitled to the funds, it does not matter that funds initially received by the state are deposited in the general fund.  In ¶ 44 of Amended Complaint, Plaintiff states that he "does not want someone else's money to be paid to him by a Ponzi scheme that will only inflict harm on others; Plaintiff wants his money-both principal and interest-returned to him." (ECF No. 5, PageID.58) (underscore in original).  But again, when "his" money was deposited into the general fund, an equal number of fungible dollars was maintained in the trust fund account, and designated as "his" money by amount, name, and last known address.  This bears no relationship to a "Ponzi scheme," where investors are paid "dividends" from principal payments of subsequent investors. Such schemes eventually bottom out when there are an insufficient number of new investors to cover payments to earlier investors. Michigan's Unclaimed Property Program is not an investment plan, and the unclaimed funds are protected by the $100,000 minimum balance required for the trust fund account under M.C.L § 567.244(1).[5]  It should also be noted that

---

[5] Defendants do not dispute that the principal amount of the funds (the amount the administrator actually received) must be paid to the Plaintiff, and state that to that extent, Plaintiff's claim has been approved and paid. (ECF No. 18, PageID.261).  In arguing the unlawfulness of Defendants' actions, Plaintiff admits that

the statute requires only that the trust fund account have a minimum balance of $100,000; it does not provide that the trust fund account be funded by subsequently received unclaimed monies, as Plaintiff suggests.   Rather, M.C.L § 567.244(1) states that the administrator "shall promptly deposit in the general fund of this state all funds received under this act."

Because the Defendants' actions were mandated by Michigan statute, they were non-discretionary, and thus protected by qualified immunity on that basis.  "As a general rule, a law enforcement official is entitled to qualified immunity for non-discretionary acts performed in conformity with state law or policy." *Kutschbach v. Davies*, 885 F. Supp. 1079, 1094 (S.D. Ohio 1995) (citing *Kentucky v. Graham,* 473 U.S. 159, 166–67 (1985)) ("When it comes to defenses to liability, an official in a personal-capacity action may, depending on his position, be able to assert personal immunity defenses, such as objectively reasonable reliance on existing law.").

Moreover, there are no cases from the Supreme Court, the Sixth Circuit, or the district courts within the Sixth Circuit holding that under either the Due Process Clause or the Takings Clause of the constitutions, claimants are entitled to interest on unclaimed funds held by a state.  The Plaintiff relies heavily on *Star-Batt, Inc. v. City of Rochester Hills*, 251 Mich. App. 502, 504–05, (2002), but that case is easily distinguishable.  In *Star-*

---

he has received the principal on the previously unclaimed properties.  "When O'Connor wanted his money back, Defendants did not have it and could not return his funds (because they had already spent it). So what did they do? Defendants converted someone's more recently incoming monies to repay O'Connor – similar to a Ponzi scheme." (ECF No. 13, PageID.208).  *See also* (*Id*. at PageID.201, n.2).  As discussed above, Plaintiff's Ponzi scheme argument is without merit.

*Batt*, the City of Rochester Hills by ordinance required the contractor (Starr-Batt) to post a bond to ensure that any damage caused by its construction activities would be compensated.  The City invested the funds from the bond, earning interest, but the ordinance was silent as to who was entitled to the interest.  The City returned the amount of the bond to Starr-Batt, but kept the interest.  The Court found that because the ordinance did not address the disposition of the earned interest, it would follow the common law rule on the issue:

> Further, *if an ordinance is silent regarding an issue*, "the Legislature is deemed to act with an understanding of common law in existence before the legislation was enacted." *Nation v. W.D.E Electric Co.,* 454 Mich. 489, 494, 563 N.W.2d 233 (1997). Moreover, "*[w]here there is doubt regarding the meaning of such a statute*, it is to be 'given the effect which makes the least rather than the most change in the common law.'"

*Id.* (quoting *Energetics, Ltd. v. Whitmill,* 442 Mich. 38, 51, 497 N.W.2d 497 (1993)). (Emphasis added).  Noting that "had the drafters of the ordinance desired to retain the right to keep whatever interest accrued on cash bonds, they could have easily inserted such language in the ordinance," *id.,* 251 Mich. App. at 511, the Court held that Starr-Batt was entitled to the interest under the common law rule:

> The trial court erred in granting summary disposition to the city because *the city chose not to state in the ordinance that it would retain interest earned on the funds and, in the absence of such language,* we apply the common-law rule that "interest follows the principal" on the basis of the contractor's superior rights to the interest earned as the owner of the funds.

*Id*. at 512. (Emphasis added).

By contrast in the present case, M.C.L. § 567.245(3) explicitly provides that the claimant will be paid only "the amount the administrator actually received" by the

administrator," and that interest will be paid only if the money or property was interest-bearing at the time it was surrendered to the state. Again, Plaintiff has not alleged that the funds at issue were ever interest-bearing. Because the statute clearly addresses when interest is paid and when it is not, common law is inapplicable. *Starr-Batt* does not give these Defendants "fair warning" that they were violating Plaintiff's rights by not paying him interest.

"When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al–Kidd,* 563 U.S. at 743 (internal quotation marks omitted). When clearly worded statutes mandate that these Defendants *not* pay interest to Plaintiff and mandate that a trust account be established for Plaintiff's unclaimed funds (an account that Plaintiff himself concedes is a non-interest bearing account), and in the absence of any relevant authority that compliance with the statute violates the constitution, it cannot be said that the Defendants "knowingly violated the law" or were plainly incompetent.

Taking the Amended Complaint's allegations as true, Eubanks and Stanton reasonably relied on existing statutory law in remitting the unclaimed funds. Accordingly, they are entitled to qualified immunity, and should be dismissed.

III.    <u>**Conclusion**</u>

For the reasons above, **I RECOMMEND** that Defendants' Second Motion to Dismiss (ECF No. 9) be **GRANTED** and that Defendants' original Motion to Dismiss (ECF No. 3) be **DENIED as MOOT**.

IV.    <u>**Review**</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  A party may respond to another party's objections within 14 days after being served with a copy."  Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.

Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  June 30, 2022                           S/ PATRICIA T. MORRIS
                                               Patricia T. Morris
                                               United States Magistrate Judge