UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENNIS O'CONNOR,
*and all those similarly situated*,

    Plaintiffs,

v.

RACHAEL EUBANKS, TERRY
STANTON, and STATE OF
MICHIGAN,

    Defendants.

No. 1:21–cv–12837–NGE–PTM

HON. NANCY G. EDMUNDS

MAG. PATRICIA T. MORRIS

**DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

---

Philip L. Ellison (P74117)
Outside Legal Counsel PLC
Attorney for Plaintiff
P.O. Box 107
Hemlock, Michigan 48626
(989) 642-0055


Gronda PLC
Matthew E. Gronda (P73693)
Counsel for Plaintiffs
4800 Fashion Square, Blvd.
Suite 200
Saginaw, MI 48604
(989) 233-1639
matt@matthewgronda.com

James A. Ziehmer (P75377)
Brian K. McLaughlin (P74958)
B. Thomas Golden (P70822)
Attorneys for Defendants
Revenue and Tax Division
P.O. Box 30754
Lansing, MI 48909
(517) 335–7584
ZiehmerJ@michigan.gov
McLaughlinB2@michigan.gov
Goldent2@michigan.gov

---

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR ALTERNATIVELY DISMISSAL**

Defendants move for summary judgment pursuant to Fed. R. Civ. P. 56(a), or alternatively, dismissal, and, for the reasons set forth in the accompanying brief, respectfully request that this Honorable Court either dismiss Plaintiffs' compliant in its entirety or grant summary judgment in favor of Defendants.

Respectfully submitted,

/s/ *James A. Ziehmer*
James A. Ziehmer (P75377)
Brian K. McLaughlin (P74958)
Assistant Attorneys General
Attorney for Defendants
Revenue and Tax Division
P.O. Box 30754
Lansing, MI 48909
(517) 335–7584
ZiehmerJ@michigan.gov
Dated: November 7, 2024    McLaughlinB2@michigan.gov

2

**CERTIFICATE OF SERVICE**

I hereby certify that on November 7, 2024, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

/s/ *James A. Ziehmer*
James A. Ziehmer (P75377)
Brian K. McLaughlin (P74958)
Assistant Attorneys General
Attorney for Defendants
Revenue and Tax Division
P.O. Box 30754
Lansing, MI 48909
(517) 335–7584
ZiehmerJ@michigan.gov
McLaughlinB2@michigan.gov

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENNIS O'CONNOR,
*and all those similarly situated*,

            Plaintiffs,

v.

RACHAEL EUBANKS, TERRY
STANTON, and STATE OF
MICHIGAN,

            Defendants.

No. 1:21–cv–12837–NGE–PTM

HON. NANCY G. EDMUNDS

MAG. PATRICIA T. MORRIS

**BRIEF IN SUPPORT OF
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

---

Philip L. Ellison (P74117)
Outside Legal Counsel PLC
Attorney for Plaintiff
P.O. Box 107
Hemlock, Michigan 48626
(989) 642-0055


Gronda PLC
Matthew E. Gronda (P73693)
Counsel for Plaintiffs
4800 Fashion Square, Blvd.
Suite 200
Saginaw, MI 48604
(989) 233-1639
matt@matthewgronda.com

James A. Ziehmer (P75377)
Brian K. McLaughlin (P74958)
B. Thomas Golden (P70822)
Attorneys for Defendants
Revenue and Tax Division
P.O. Box 30754
Lansing, MI 48909
(517) 335–7584
ZiehmerJ@michigan.gov
McLaughlinB2@michigan.gov
Goldent2@michigan.gov

---

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR
## SUMMARY JUDGMENT OR ALTERNATIVELY DISMISSAL

James A. Ziehmer (P75377)
Brian McLaughlin (P74958)
B. Thomas Golden (P70822)
Assistant Attorneys General
Attorneys for Defendants
Revenue and Tax Division
P.O. Box 30754
Lansing, MI 48909
(517)335–7584
ZiehmerJ@michigan.gov
McLaughlinB2@michigan.gov
Goldent2@michigan.gov

Dated:  November 7, 2024

# TABLE OF CONTENTS

Table of Contents ............................................................................. i

Index of Authorities........................................................................ ii

Concise Statement of Issues Presented ...................................... v

Controlling or Most Appropriate Authority................................ v

Statement of Facts ......................................................................... 1

Argument......................................................................................... 2

I.    Defendants are entitled to summary judgment on Counts I–
      IV of the amended complaint because dismissal of those
      counts was previously affirmed by the Sixth Circuit. .................... 2

II.   Eubanks and Stanton are entitled to qualified immunity ............. 5

III.  New "controlling authority" warrants reexamining the
      central questions presented in this case and granting
      summary judgment to the Defendants. ........................................... 8

IV.   There is no due-process violation..................................................... 11

      A.    There is no due-process violation when a holder
            transfers property to the State. ............................................ 12

      B.    There is no due-process violation after the transfer
            regarding principal and interest.......................................... 14

            1.    There was no deprivation. ........................................... 16

            2.    O'Connor received all the process he was due............ 18

Conclusion and Relief Requested............................................... 23

Certificate of Service (e-file)...................................................... 24

# INDEX OF AUTHORITIES

<u>Page</u>

## Cases

*Anderson National Bank* v. *Luckett*
    321 U.S. 233 (1944) ....................................................................... 13, 14

*Bd. of Regents* v. *Roth*
    408 U.S. 564 (1972) ................................................................................ 11

*Blair v. Sealift, Inc.*
    91 F.3d 755 (5th Cir. 1996) ..................................................................... 9

*Carey* v. *Piphus*
    435 U.S. 247 (1978) ............................................................................... 20

*Dani* v. *Miller*
    374 P.3d 779 (Okla. 2016) ......................................................... 19, 21, 22

*Dillow* v. *Garity*
    No. CV 22-1852 (E.D. Pa., May 3, 2024)............................................. 17

*Flint Cold Storage v. Department of Treasury*
    776 N.W.2d 387 (Mich. App. 2009) ................................................ 10, 11

*Garza v. Woods*
    No. CV-22-01310-PHX-JJT (D. Ariz., Aug. 30, 2023).................... 18, 19

*Hall* v. *State*
    908 N.W.2d 345 (Minn. 2018) ........................................... 16, 18, 19, 21

*Hayward* v. *Cleveland Clinic Found.*
    759 F.3d 601 (6th Cir. 2014) ................................................................... 4

*Kemerer, et al. v. State of Michigan and Department of Treasury*
    (Mich. Ct. App. Oct. 29, 2024)................................................ 6, 8, 9, 10

*Leary* v. *Daeschner*
    228 F.3d 729 (6th Cir. 2000) ................................................................. 15

*Matthews* v. *Eldridge*
    424 U.S. 319 (1976) .............................................................. 15

*McLaurin* v. *Fischer*
    768 F.2d 98 (6th Cir. 1985) ....................................................... 3

*Mullane* v. *Central Hanover Bank* & *Trust Co.*
    339 U.S. 306 (1950) ................................................ 16, 18, 19

*North Mississippi Communications, Inc. v Jones*
    951 F.2d 652 (5th Cir. 1992) ..................................................... 9

*O'Connor v. Eubanks, et al.*
    83 F.4th 1018 (6th Cir. 2023)................................................ v, 15, 18

*Ross, Brovins & Oehmke, P.C.* v. *Lexis/Nexis Grp.*
    (2:03-cv-74474-NGE ECF No. 52, PageID.1674-1675) .......................... 4

*Scott v. Churchill*
    377 F.3d 565 (6th Cir. 2004) ..................................................... 3

*Taylor v. Westly*
    402 F.3d 924 (9th Cir. 2005) .................................................... 18

*Texaco, Inc. v Short*
    454 U.S. 516 (1982) .......................................................... 18, 19

*Thomas v. Cohen*
    304 F.3d 563 (6th Cir. 2002) .................................................... 15

*Tyler* v. *Hennepin County*
    598 U.S. 631 (2023) ............................................................ 22

*Wuliger v. Liberty Bank N.A.*
    No. 3:02 CV 1378 (N.D. Ohio Jan. 6, 2006) ................................... 4, 5

## Statutes

42 U.S.C. § 1983 ...................................................................... 2

Mich. Comp. Laws § 567.238................................................... 20

Mich. Comp. Laws § 567.239.................................................................20

Mich. Comp. Laws § 567.241(1) ...........................................................20

Mich. Comp. Laws § 567.244(1) ...................................................2, 7, 12

Mich. Comp. Laws § 567.245..........................................................16, 20

Mich. Comp. Laws § 567.245(2) ...........................................................20

Mich. Comp. Laws § 567.245(3) ..................................................5, 16, 17

Mich. Comp. Laws § 567.247........................................................16

## CONCISE STATEMENT OF ISSUES PRESENTED

1.  The Eleventh Amendment bars suits against States for matters involving the Fifth Amendment.  This is equally true for the personal capacity suits against the state officials to the extent O'Connor seeks monetary recovery from the state treasury rather than from them personally.  Does the Eleventh Amendment bar O'Connor's claims?

2.  Governmental officials are entitled to qualified immunity unless they have violated a clearly established right at the time of the challenged conduct.  The Supreme Court has not addressed whether the federal common law rule of "interest follows the principal" applies to unclaimed property, and, while federal courts are split, the Michigan Court of Appeals recently held "that the UUPA was intended to supersede and replace any common law pertaining to escheated or abandoned property in Michigan."  Did the Defendants violate a clearly established right when they do not pay interest on non-interest-bearing unclaimed property?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Authority*: *O'Connor v. Eubanks, et al.*, 83 F.4th 1018 (6th Cir. 2023).

## STATEMENT OF FACTS

After filing his Complaint, O'Connor submitted a claim with the Michigan Department of Treasury seeking to claim unclaimed property. (Ex. A, ¶12.)  He submitted the claim on December 10, 2021.  (Ex. A, ¶ 12.)  The claim has been processed and paid.  (Ex. A, ¶ 26.)  For the two properties reported as abandoned in dispute, O'Connor received from the State the exact same value the State received from the holders for the properties.  (Ex. A.)  The properties identified by O'Connor were reported to Treasury as being non-interest-bearing on the date they were reported to Treasury.  (Ex. A, ¶ 21.)

The first property, identified as property 1, was reported by FMC Corporation to Michigan on April 30, 2018.  (Ex. A., ¶ 18.)  The second property, identified as property 2, was reported by Michigan Millers Mutual Insurance Company to Michigan on December 22, 2003.  (Ex. A, ¶ 19.)

For both properties, Treasury followed the same process: the money was initially deposited into the unclaimed property account, which is non-interest-bearing, and after accounting for anticipated annual claims, the balance of the fund was deposited into the State's

general fund.  See also Mich. Comp. Laws § 567.244(1).  Michigan law

requires Treasury to maintain an account from which all successful

unclaimed property claims are to be paid.  The account is non-interest-

bearing.  (Ex. A, ¶ 11.)  The non-interest-bearing account maintained by

the State where the funds were initially deposited is the same account

maintained pursuant to statute and from which Treasury paid

O'Connor.  (Ex. A, ¶ 7.)

Rachael Eubanks, the current state Treasurer, was appointed to

her position in January 2019.

https://www.michigan.gov/treasury/about/biographies/treasurer/rachael-

eubanks.  Terry Stanton became the manager of Treasury's unclaimed

property division on April 10, 2016.  (Ex. A, ¶ 3.)


## ARGUMENT

### I.   Defendants are entitled to summary judgment on Counts I–IV of the amended complaint because dismissal of those counts was previously affirmed by the Sixth Circuit.

O'Connor realleges four counts in the amended complaint that

were previously rejected by the Sixth Circuit involving the Fifth

Amendment claims against the State of Michigan and Fifth

Amendments claims, asserted through 42 U.S.C. § 1983, against

2

Eubanks and Stanton.  O'Connor acknowledges that the dismissal of these counts was affirmed by the Sixth Circuit.  (ECF No. 40, PageID.453-457, n. 2, n. 4, n. 6, n. 7.)  The Defendants are entitled to summary judgment on these claims because of the law-of-the-case doctrine.

To O'Connor's credit, he acknowledges that these claims are for preservation purposes, and he provides a law review article in an attempt to justify his approach.  But that article does not address the Sixth Circuit; nor does that article address amended pleadings following a dispositive ruling on appeal.  Instead, the law of the case governs this issue.

The law-of-the-case doctrine precludes O'Connor from reasserting the dismissed counts.  This doctrine provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."  *Scott v. Churchill,* 377 F.3d 565, 569–70 (6th Cir. 2004).  Furthermore, O'Connor's position ignores that "the law is well settled that an appeal from a final judgment draws into question all prior non-final rulings and orders."  *McLaurin* v. *Fischer*, 768 F.2d 98, 101 (6th Cir. 1985).  See also

*Hayward* v. *Cleveland Clinic Found.*, 759 F.3d 601, 618 (6th Cir. 2014) ("[W]here the district court acknowledged that it dismissed Plaintiffs' pre-arrest claims on the merits, it would be illogical to deny them the right to appeal those claims simply because they failed to include them in subsequent pleadings.").

There is support in this district for dismissing re-asserted counts that were previously dismissed. See *Ross, Brovins & Oehmke, P.C.* v. *Lexis/Nexis Grp.*, (2:03-cv-74474-NGE ECF No. 52, PageID.1674-1675). ("Because this Court's December 9, 2004 Order dismissed, among others, LawMode's allegations in ¶¶ 48(d) and (g), and LawMode did not appeal that decision to the Sixth Circuit, any allegations in the Amended Complaint that reassert those same points must now be dismissed."), *amended on reconsideration,* No. 03-74474, 2007 WL 2004869 (E.D. Mich. July 9, 2007).

In *Wuliger* v. *Liberty Bank, N.A.*, the district court faced an amended complaint filed by the receiver; the receiver sought to "preserve his right to appeal dismissal of Counts 1 and 2," and noted in the amended complaint that "Plaintiff retains this Count in order to preserve its right to appeal the Court's dismissal of this

Count." *Wuliger,* No. 3:02 CV 1378, 2006 WL 42089, at *2 n. 1 (N.D. Ohio Jan. 6, 2006). The district court dismissed the counts and acknowledged that even with some alterations the amended counts would not survive the applicable legal test. *Id.* ("While the Court understands the Receiver's procedural concern of reasserting these claims for purposes of appeal, they are insufficient to meet the requirements under *Reves.* Accordingly, Defendants' motion to dismiss is granted as to Counts 1 and 2 of the Amended Complaint.") (citation omitted).

In sum, this Court should grant summary judgment on Counts I–IV of the amended complaint for the reasons already articulated by this Court and the Sixth Circuit.

## II. Eubanks and Stanton are entitled to qualified immunity

Michigan law distinguishes between interest-bearing and non-interest-bearing property when paying interest to successful claimants. Mich. Comp. Laws § 567.245(3). The right identified by O'Connor is the right to interest accrued on abandoned, non-interest-bearing property. (ECF No. 1, PageID.2 ¶¶ 15–16; Ex. A, ¶¶ 6–10.) The Defendants maintain their position that no such right exists, as clarified by the

5

Michigan Court of Appeals recent decision in *Kemerer, et al. v. State of Michigan and Department of Treasury*, Mich. Ct. App., Oct. 29, 2024) ("[A]pplication of the doctrine of interest follows principal to the present facts is unwarranted."). Regardless, there is no evidence that any interest accrued on the properties claimed by O'Connor.

O'Connor's theory is that the State and the Defendants took his property, and he was denied due process. He never explains when this deprivation occurred. What can be gleaned from O'Connor's position is that at some point this supposed taking occurred when the State allegedly included the abandoned property in its annual transfer of a lump sum balance from its unclaimed property account, generated from new deposits of abandoned property, into the State's general fund.

Defendant Rachael Eubanks was neither employed by the State nor serving as Treasurer at any point when the properties were received by the State from the holders and/or assumedly deposited in the State's general fund. Moreover, Defendant Terry Stanton, was only employed in his current role when one of the properties (the FMC Corporation property) was received by the State from the holder and/or assumedly transferred to the general fund. The remaining property

6

(the Michigan Millers Mutual Insurance Company property) predates his employment.  Accordingly, Eubanks and Stanton are entitled to summary judgment dismissing the claims, and to the extent O'Connor may have stated a claim related to the FMC Corporation property, there is no evidence the abandoned property ever left the non-interest-bearing account between being remitted by the holder and ultimately being paid out to O'Connor.  In short, this Court should dismiss O'Connor's complaint in its entirety.

The annual transfer, required by statute, does not correspond to specific abandoned properties; rather it is the amount exceeding the anticipated value of the claims to be made during the next fiscal year. (Ex. A, ¶¶ 9–10.)  Additionally, money in fungible, and all claims for abandoned property are paid out of the same account as required by statute, see Mich. Comp. Laws § 567.244(1), an account that is non-interest-bearing.  (Ex. A, ¶ 11.)  This is the same account where abandoned properties are deposited in the first instance when received from the original holders.  (Ex. A, ¶ 7.)

Accordingly, there is no evidence that the abandoned property O'Connor claimed was ever transferred to the State's general fund, nor

any evidence those specific dollars ever left the non-interest-bearing account while the State held the money.  Instead, the evidence demonstrates that the holders remitted abandoned property in the name of O'Connor, those funds were deposited into a non-interest-bearing account required to be maintained by statute for abandoned property, and, years later, O'Connor made a successful claim and received a check from the State for the exact value the State received from the holders.  O'Connor has failed to establish that a taking occurred at all, let alone one requiring additional compensation beyond what he already received.

Accordingly, this Court should grant the Defendant's motion to dismiss because of qualified immunity.

### III.   New "controlling authority" warrants reexamining the central questions presented in this case and granting summary judgment to the Defendants.

On October 29, 2024, the Michigan Court of Appeals issued a published decision directly addressing the central legal questions presented in this case—the availability of interest for abandoned property that was originally non-interest bearing.  *Kemerer, et al. v. State of Michigan and Department of Treasury*, Mich. Ct. App. Oct. 29,

2024) (Ex. B.)  The Michigan Court of Appeals' binding interpretation of Michigan law directly conflicts with the Sixth Circuit's decision in this case concerning the interpretation of Michigan law and what rights exist under the Unclaimed Property Act.

In the case, Kemerer raised identical arguments to those raised here, and Kemerer was represented by O'Connor's counsel.  To date, this is the only appellate decision in Michigan directly addressing and clarifying that Michigan Uniform Unclaimed Property Act (1) abrogates the common law, (2) provides Michigan with an ownership interest in abandoned property in its possession, and (3) does not provide a claimant with a superior property right to that of the State's own property right to interest generated on abandoned properties that he or she abandoned.

Federal appellate court decisions "may be reexamined both on remand and on subsequent appeals if 'controlling authority has since made a contrary decision of law applicable to such issues.' " *Blair v. Sealift, Inc.*, 91 F.3d 755, 761 (5th Cir. 1996) (quoting *North Mississippi Communications, Inc. v Jones*, 951 F.2d 652, 656 (5th Cir. 1992).  "State appellate court decisions may constitute subsequent, controlling

authority that overrides an earlier determination by [a federal court of appeals]." *Id.*, 91 F.3d at 762.  Moreover, there is no indication that the Michigan Supreme Court would reach a different conclusion.

Here, the Michigan Court of Appeals' published decision highlights the soundness of this Court's prior decision dismissing O'Connor's claims.  It directly addresses the proper interpretation of Michigan law, what rights Michigan's escheatment law provides claimants after they abandon property, and it addresses what rights the State has to those properties (i.e., the State exercises an ownership interest.  As stated by the Michigan Court of Appeals in *Kemerer*, "Plaintiff's position that she owns the property, and therefore, has an entitlement to interest earned while in defendants' custody, ignores the presumption of abandonment, principles of dual ownership, and the legislative provisions for defendant to exercise ownership over the property through sale and disbursement to a claimant." (Ex. B, p. 12. (footnote omitted.))  This holding is directly contrary to the Sixth Circuit's suggestion, based on dicta in *Flint Cold Storage v. Department of Treasury*, 776 N.W.2d 387, 393 (Mich. App. 2009), that the State holds the unclaimed property in trust—the State does not do so.  Had

the trust concept accurately reflected Michigan law, the Michigan Court of Appeals would have relied on *Flint Cold Storage*, a case briefed and addressed at oral argument, and Kemerer would likely have prevailed.

Considering the Michigan Court of Appeals' published decision, O'Connor has no viable cause of action, Eubanks and Stanton did nothing wrong, and they certainly did not violate any clearly established right.  Thus, Eubanks and Stanton are entitled to summary judgment and dismissal of the claims.

## IV.   There is no due-process violation.

O'Connor asserts he was deprived of due process: (1) when the abandoned property was transferred from the holder to the State (ECF No. 40, PageID.462); (2) when it allegedly accumulated interest while in the State's possession (ECF No. 40, PageID.459); and (3) when the principal was "seized and used" by the State. (ECF No. 40, PageID.460). He never truly identifies the date of the purported deprivation, which is not surprising considering he abandoned the property.

Due-process claims must be understood in context, including examining state law.  *Bd. of Regents* v. *Roth*, 408 U.S. 564, 577 (1972). Here, Michigan took custody of the checks by the proper operation of

11

state law, and 20 years later O'Connor filed a claim for them.  All of O'Connor's properties were reported to Treasury as not "interest bearing" on the date they were reported.  Consistent with Michigan law, Treasury maintained an account from which all successful unclaimed property claims are to be paid.  Mich. Comp. Laws § 567.244(1).  After O'Connor filed a claim, Treasury approved it and paid O'Connor the amount of the claim, which was the original amount of the property at the time of abandonment—without interest, as directed by statute.

There is no due-process violation because there was no deprivation of a property interest; O'Connor received the equivalent value of his principal without interest—the same position he would have been in had he not abandoned the assets.  Even then, the UUPA provides adequate statutory notice to satisfy due process.

**A.    There is no due-process violation when a holder transfers property to the State.**

At the outset, Counts V and VI were previously defended by O'Connor on appeal to the Sixth Circuit, but Count VII of the amended complaint is new in that he argues that he was denied procedural due process because Eubanks and Stanton, allegedly, provided no notice or

opportunity to be heard before the holders (i.e., the entities having

O'Connor's monies and claiming they could not locate him) transferred

his abandoned property to the State of Michigan.  (ECF No. 40,

PageID.462, ¶ 18.)  This new argument is, however, without merit

because the Supreme Court in *Anderson National Bank* v. *Luckett*, 321

U.S. 233 (1944), held that there is no due-process violation when a

holder transfers property to the State.

In *Anderson National Bank*, the Court stated States have "the

constitutional power . . . to protect the interests of depositors from the

risks which attend long neglected accounts, by taking them into custody

when they have been inactive so long as to be presumptively

abandoned[.]" *Anderson Nat. Bank*, 321 U.S. at  241.  As such, "[t]he

mere fact that the state or its authorities acquire possession or control

of property as a preliminary step to the judicial determination of

asserted rights in the property is not a denial of due process." *Id.* at

247.

The Court went on to explain that there is no due-process

violation when property is abandoned by a holder to the State if a

statute provides adequate notice:

13

> The statute itself is notice to all depositors of banks within
> the state, of the conditions on which the balances of inactive
> accounts will be deemed presumptively abandoned, and their
> surrender to the state compelled.  All persons having
> property located within a state and subject to its dominion
> must take note of its statutes affecting the control or
> disposition of such property and of the procedure which they
> set up for those purposes.

*Id.* at 243.  There is no due-process violation when a state (Kentucky) places funds in a state's custody and thus substitutes the state for the private holder because that process "deprives [the plaintiffs] of none of their rights as creditors, preserving their right to demand from the state payment of the [monies], and their right to resort to the courts if payment is refused."  *Id.* at 241–42.  Again, Defendant Eubanks had no authority over the abandoned properties when they were transferred to the State, and the same is true of Defendant Stanton for two out of the three abandoned properties.

## B.   There is no due-process violation after the transfer regarding principal and interest.

As to the post-transfer claims regarding principal and interest, the Sixth Circuit noted, "We do not decide the kind of notice and process that the Due Process Clause requires here.  We save that issue for the district court on remand.  Similarly, we do not decide here whether

[Uniform Unclaimed Property Act's] notice and process requirements would satisfy the Due Process Clause." *O'Connor* v. *Eubanks*, 83 F.4th 1018, 1023 n.5 (6th Cir. 2023).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Matthews* v. *Eldridge*, 424 U.S. 319, 332 (1976). "First, the court must determine whether the interest at stake is a protected liberty or property right under the Fourteenth Amendment. Only after identifying such a right do we continue to consider whether the deprivation of that interest contravened notions of due process." *Thomas v. Cohen*, 304 F.3d 563, 576 (6th Cir. 2002). "When a plaintiff has a protected property interest, a predeprivation hearing of some sort is generally required to satisfy the dictates of due process." *Leary* v. *Daeschner*, 228 F.3d 729, 742 (6th Cir. 2000). "[T]he sufficiency of predeprivation procedures must be considered in conjunction with the options for postdeprivation review[.]" *Id.* at 743. The Sixth Circuit clearly found a property interest, *O'Connor*, 83 F.4th at 1023, which was one of the issues that the Defendants contest was

erroneous and filed a petition for certiorari with the Supreme Court. But there was no deprivation.

### 1.   There was no deprivation.

Michigan's UUPA creates a temporary escheatment system, which means that property is always reclaimable.  Mich. Comp. Laws § 567.247.  See also *Hall* v. *State*, 908 N.W.2d 345, 360 (Minn. 2018) ("Because property under the Act is always reclaimable, *Mullane*'s conclusion that notice by publication does not satisfy due process is not controlling here.").  Thus, the custodial aspect of Michigan's law conserves the value of the abandoned property in perpetuity. Independent of abandonment, Michigan law grants the former owner an opportunity to later claim an interest in and reestablish ownership of that abandoned property by filing a successful claim.  Mich. Comp. Laws § 567.245.  In the case of property that was interest-bearing to the former owner on the date of surrender by the holder to the State, the former owner is entitled under Michigan law to receive the same amount the State received from the holder of the abandoned property, plus interest.  Mich. Comp. Laws § 567.245(3).  But where, as here, the property was not interest bearing at the time of surrender, the former

16

owner may receive the same amount the State received from the holder of the abandoned property, but no more.  Mich. Comp. Laws § 567.245(3).

There is no dispute that O'Connor's assets never generated interest before being transferred to the State.  Because the State did not permanently extinguish any rights—i.e., O'Connor remained free to reestablish title, he remained in the same position as if the assets remained with the holder—the law does not let O'Connor profit from his inaction in preserving his assets consistent with Michigan's UUPA.  See *Dillow* v. *Garity*, No. CV 22-1852, 2024 WL 1975458, at *5 (E.D. Pa., May 3, 2024)  ("However, where there is no owner to whom the government is able to grant compensation, as is the case with abandoned property, it does not make sense to require the government to be financially liable for this intervening period before an owner comes forward to claim his property.").

In *Garza* v. *Woods*, the district court of Arizona found that there was no due-process violation because the plaintiff could not have asserted a demand for interest while in possession of the holder.  The district court, citing *Anderson National Bank*, found there was no

17

deprivation of a property interest because the state of Arizona was merely being substituted for the original holder. *Garza v. Woods*, No. CV-22-01310-PHX-JJT, 2023 WL 5608414, at *6 (D. Ariz., Aug. 30, 2023). In rejecting the constitutional challenges, the district court recognized that

> Plaintiffs do not allege that the State transformed their property by, for example, selling their stock, as in *Taylor*, 402 F.3d at 929, *or transferring the principal from a previously interest-bearing account, as in Hall*, 908 N.W.2d at 356. *According to Plaintiffs' own allegations, Plaintiffs can make the same claim on the State that they could have made on the original holder, had Plaintiffs been diligent in the first instance.*

*Id.* (emphasis added). Just like the plaintiff in *Garza*, had O'Connor been diligent with his properties, he would have no claim to interest from the holders. And, therefore, the State did not deprive him of a property interest.

## 2. O'Connor received all the process he was due.

Because the State did not deprive O'Connor of any existing rights, the notice standards in *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), are inapplicable. See *O'Connor*, 83 F.4th at 1023. The Supreme Court in *Texaco* explained that "[t]he due process standards of *Mullane* apply to an 'adjudication' that is 'to be accorded

18

finality' " and that "Mullane itself distinguished the situation in which a State enacted a general rule of law *governing the abandonment of property*." *Texaco, Inc. v Short*, 454 U.S. 516, 535 (1982) (emphasis added).  See also *Garza*, 2023 WL 5608414, at *8 n. 6 (rejecting *Mullane* for a *Texaco* analysis because statutory scheme itself satisfies due process), and *Dani* v. *Miller*, 374 P.3d 779, 796 (Okla. 2016) ("[T]he requirements of due process would apply only to a proceeding brought to adjudicate if that right did in fact terminate.").

There is no dispute that Michigan's UUPA provides all the process that is due.  In a case nearly identical to the one here, the Minnesota Supreme Court found no due-process violation regarding the transfer of principal to Minnesota's unclaimed property division: "the Act does not deprive these appellants of a protected property interest because it merely results in the substitution of the Commissioner as the holder of their unclaimed property." *Hall* v. *State*, 908 N.W.2d 345, 358 (Minn. 2018).  Like the commissioner in the Minnesota statute, Michigan's State Treasurer is responsible for the safe keeping of the property in perpetuity until the owner claims the property in the manner provided in the UUPA and establishes that claim.  Mich. Comp. Laws §

567.241(1) and § 567.245.  The UUPA did not deprive O'Connor of his

principal; on the contrary, the state's law preserved the principal

despite his abandonment.

It can equally be said that O'Connor had statutory notice that the

consequence of his abandonment would mean that his property would

not generate interest by plain operation of Mich. Comp. Laws

§ 567.245(2).  Michigan's UUPA did not hinder any rights of O'Connor

that existed before abandonment; it merely preserved the status quo.

Even if there could conceivably be a deprivation of interest,

O'Connor ignores that the protections afforded under the Due Process

Clause are "meant to protect persons not from the deprivation, but from

the *mistaken or unjustified* deprivation of life, liberty, or property."

*Carey* v. *Piphus*, 435 U.S. 247, 259 (1978) (emphasis added).

Michigan's UUPA, Mich. Comp. Laws § 567.238, provides

procedures for holders to notify the property owner before the property

is surrendered to Treasury.  The holders in this case notified the State

that they had complied with those requirements.  (Ex. A,¶ 22.)  And

Treasury is obligated to provide publication notice every six months.

See Mich. Comp. Laws § 567.239.  This is in addition to the publicly

20

available website to search for unclaimed property.  These procedures are nearly identical to those upheld by the Minnesota Supreme Court in *Hall,* 908 N.W.2d at 360 ("We conclude that the numerous types of notice provided by statute including publication, mailed notice by the holder, the ability to inspect public records, and the general notice provided by the statute itself, combine to provide sufficient notice to satisfy the requirements of due process.").  These procedures were sufficient as O'Connor was able to locate his property and submit a claim.  (Ex. A, ¶ 12.)  See also *Dani* , 374 P.3d at 798 ("[T]he undisputed facts of this cause indicate that he became aware the State had taken custody of his abandoned property, filed a claim, the claim was approved, and his property was returned to him.").

Besides statutory notice, O'Connor received actual notice as required under the UUPA, including Michigan's website.  That actual notice defeats O'Connor's due-process claim; there is no dispute O'Connor knew the property was held by the State as O'Connor made a claim for them.  See also *Hall*, 908 N.W.2d at 360–61 ("The notice provided under the Act provides not only what is constitutionally required by due process, but it also provided actual notice because

21

Wingfield did in fact learn that her property was held by the State.");

*Dani*, 374 P.3d at 798 (Plaintiff "became aware the State had taken

custody of his abandoned property, filed a claim, the claim was

approved, and his property was returned to him.  Appellant's

allegations that the UUPA does not provide constitutionally-sufficient

notice are without merit.").  Our Supreme Court, i.e. *Tyler* v. *Hennepin*

*County*, 598 U.S. 631, 646–47 (2023), and other state courts set such

abandoned properties in their own category, recognizing that "notice" in

the context of abandoned property requires a different analysis than

typical due process might require for a located, active owner—like a

condemnation or takings case.

   In sum, the Defendants are entitled to summary judgment on

O'Connor's procedural due process claim.

## CONCLUSION AND RELIEF REQUESTED

Accordingly, for the reasons set forth above, the Defendants respectfully ask that this Court grant their motion and enter an order granting summary judgment or alternatively dismissing the case.

Respectfully submitted,

<u>/s/ *James A. Ziehmer*</u>
James A. Ziehmer (P75377)
Brian McLaughlin (P74958)
B. Thomas Golden (P70822)
Assistant Attorneys General
Attorney for Defendant
Revenue and Tax Division
P.O. Box 30754
Lansing, MI 48909
(517)335–7584
ZiehmerJ@michigan.gov
McLaughlinB2@michigan.gov

Dated:  November 6, 2024

23

**CERTIFICATE OF SERVICE (E-FILE)**

I hereby certify that on November 6, 2024, I electronically filed the

above document(s) with the Clerk of the Court using the ECF System,

which will provide electronic copies to counsel of record.

>           /s/ *James A. Ziehmer*
>           James A. Ziehmer (P75377)
>           Brian McLaughlin (P74958)
>           Assistant Attorneys General
>           Attorney for Defendant
>           Revenue and Tax Division
>           P.O. Box 30754
>           Lansing, MI 48909
>           (517)335–7584
>           ZiehmerJ@michigan.gov
>           McLaughlinB2@michigan.gov
>           Goldent2@michigan.gov