UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENNIS O'CONNOR,
and all those similarly situated,

        Plaintiffs,

v.

RACHAEL EUBANKS, TERRY STANTON,
and the STATE OF MICHIGAN,

        Defendants.
_____/

Case No: 21-12837

Honorable Nancy G. Edmunds
Magistrate Judge Patricia T. Morris

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR ALTERNATIVELY DISMISSAL [47]**

This putative class action concerns Michigan's Uniform Unclaimed Property Act ("UUPA"), Mich. Comp. Laws §§ 567.221 *et seq.* and the State's concomitant program for unclaimed property ("UPP"). "Under the UUPA, all property . . . held in a holder's business and left unclaimed for more than three years after it becomes payable is presumed abandoned." *Kemerer v. State*, __ N.W. 3d. __, No. 362055, 2024 WL 4609911, at *6 (Mich. Ct. App. Oct. 29, 2024) (quotation marks omitted) (quoting Mich. Comp. Laws § 567.223(1)). If the conditions for the presumption of abandonment are raised, the State takes custody and ownership of the property, but the property can be recovered by the original owner by making a claim as set forth by the UUPA. *Id.* at *6-9. Plaintiff Dr. Dennis O'Connor, on behalf of himself and the class he seeks to represent, filed a second amended complaint for money damages against the State of Michigan and Defendants Rachael Eubanks (administrator of UPP) and Terry Stanton (state

1

administrative manager of UPP) in their personal capacities. (ECF No. 40.) Plaintiff's second amended complaint includes seven counts. *Id.* The first four of which are reasserted counts that were dismissed by this Court and affirmed, some only in part, by the Sixth Circuit. (ECF No. 49, PageID.642 n.4.) Plaintiff alleges Defendants committed an unconstitutional taking of his property and interest earned on it by taking custody of the principal and withholding interest earned on it while in the State's custody. (ECF No. 40.) Plaintiff also alleges Defendants violated his due process rights in the manner the property was transferred to State custody. *Id.* Defendants collectively filed a motion for summary judgment or alternatively dismissal. (ECF No. 47.) Plaintiff opposes the motion. (ECF No. 49.) Defendants filed a reply. (ECF No. 51.) Under Eastern District of Michigan Local Rule 7.1(f)(2), the motion will be decided without oral argument. For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART Defendants' motion.

    This case's procedural history bears mentioning. Defendants moved to dismiss Plaintiff's first amended complaint. (ECF No. 9.) That motion was referred to Magistrate Judge Patricia T. Morris. (ECF No. 15.) This Court accepted and adopted the Magistrate Judge's report and recommendation and granted Defendants' motion to dismiss Plaintiff's complaint. (ECF No. 28.) In that complaint, Plaintiff raised Fifth Amendment takings claims on the interest and principal against each defendant and Fourteenth Amendment due process claims against Defendants Eubanks and Stanton. *Id.* The Court dismissed with prejudice Plaintiff's claims against the State on sovereign immunity grounds and dismissed with prejudice his claims against Defendants Eubanks and Stanton on qualified immunity grounds. *Id.* Plaintiff appealed. (ECF No. 30.) The Sixth Circuit affirmed in part,

2

vacated in part, and remanded the case to this Court for further proceedings.[1] *O'Connor v. Eubanks*, 83 F.4th 1018 (6th Cir. 2023). The Sixth Circuit affirmed the Court's dismissal of Plaintiff's taking claims against Defendants Eubanks and Stanton but held they were not entitled to qualified immunity on the due process claims, and Plaintiff plausibly alleged a violation of his right to notice and process before being deprived of a property right. *Id.* at 1023-24. Of note, the Sixth Circuit held Plaintiff had a property right in the principal and any interest the State earned on it while in its custody, stating: "the parties disagree over whether O'Connor has a right to interest. Precedent clearly establishes that he does. When the government takes custody of private property and earns interest on it, that interest belongs to the owner. The Supreme Court has reaffirmed this rule time and again." *Id.* at 1023 (citations omitted). In sum, only Plaintiff's due process claims against Defendants Eubanks and Stanton remain.

Less than a month later, the Michigan Court of Appeals ("Appeals Court") issued an opinion[2] relevant to this case. *See Kemerer*, 2024 WL 4609911. The Appeals Court held the UUPA abrogated the common law doctrine that interest follows principal, and, accordingly, the UUPA's provisions governing original owners' entitlement to any interest control. *Id.* at *8. The Appeals Court also held that property held in the UPP is deemed abandoned and the State becomes owner and titleholder of property held in the UPP.[3] *Id.* at *9. As a result, under the UUPA, individuals whose property was not interest-bearing at the time the State took custody do not have a property right under Michigan law in interest

---

[1] The Sixth Circuit agreed the claims against the State should be dismissed but ruled they should be dismissed without prejudice. *O'Connor v. Eubanks*, 83 F.4th 1018, 1024 (6th Cir. 2023).
[2] The opinion is for publication but has not yet been published in the Northwest Reporter.
[3] The plaintiff there applied for leave to appeal the decision, which the Michigan Supreme Court denied. *Kemerer v. State*, 21 N.W.3d 201 (Mich. 2025).

3

earned on the property while in the State's custody and the State becomes owner unless the original owner makes a successful claim for its return.

Relying on the Appeals Court's decision, Defendants argue they are entitled to summary judgment or dismissal of Plaintiff's claims regarding any interest earned on his property while it was abandoned because, under Michigan law, he does not have a right to that interest and the State becomes owner while the property is in the UPP. (ECF Nos. 47, PageID.595-98, 603-04; 51, PageID.840-42.) Defendants assert the law of the case doctrine should result in dismissal of Plaintiff's re-alleged takings claims against the State and Defendants Eubanks and Stanton. (ECF No. 47, PageID.589-92.) Defendants further argue there was no due process violation because Plaintiff was not deprived of a property interest where he could always reestablish ownership of the principal, and, if there was a deprivation, Plaintiff received sufficient notice and process by the UUPA's statutory publication and the UPP's website where individuals can search for abandoned property. *Id.* at 603-08.

Plaintiff argues statutory notice is insufficient and he did not receive the notice required under the UUPA or adequate process in general. (ECF No. 49, PageID.643-47.) Plaintiff maintains he has a protected property interest in both the principal and any interest, and that Defendants deprived him of those interests when taking custody of his property through the UPP. *Id.* at 652-60. Plaintiff also argues *Kemerer* was wrongly decided, and he does have a property right in interest earned on his principal property. *Id.* at 657-60.

I.      **Background**

4

This case arises out of Plaintiff discovering that two properties in the form of money that belonged to him but were previously held by two third parties had been turned over to the UPP. (ECF No. 49, PageID.683.) One property of $54.50 was held by FMC Corporation ("FMC") and $120.00 was held by Michigan Millers Mutual Insurance Company ("MMI"). *Id.* Plaintiff claims he never received notice from either holder that they would transfer custody of his property to the UPP. *Id.* The FMC money was reported to the UPP in 2003 and the MMI money in 2018. (ECF No. 47, PageID.588.) Plaintiff filed a claim for their return shortly after discovering his property was in the UPP. (ECF No. 49, PageID.639-40.) Between discovering his property was in the UPP and filing his claim for its return, Plaintiff filed a complaint in this Court alleging the constitutional violations discussed above. (ECF No. 47, PageID.588.) Plaintiff received a check for the sum amount of the property at the time the UPP received custody of it but no more. (ECF No. 49, pageID.641.)

## II.     Dismissal Standard of Review and Effect of Other Decisions

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). But the court "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). A plaintiff's factual allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief."

*League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). When deciding a motion under Rule 12(b)(6), the Court looks only to the pleadings. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). However, "a court ruling on a motion to dismiss may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice." *Bailey v. City of Ann Arbor*, 860 F.3d 382, 386 (6th Cir. 2017) (quoting *New Eng. Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003)).

As mentioned above, the Appeals Court has weighed in on issues relevant to this case. Although Plaintiff raises claims of constitutional violations related to his property, property interests "are not created by the Constitution," but "they are created and their dimensions are defined by . . . an independent source such as state law . . . ." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). Accordingly, Michigan state-law controls the existence and dimensions of property rights. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("[e]xcept in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state").

Regarding counts I-IV of Plaintiff's second amended complaint, whose dismissals were already affirmed by the Sixth Circuit, "[t]he law of the case doctrine 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Scott v. Churchill*, 377 F.3d 565, 569 (6th Cir. 2004) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)).

Although the Sixth Circuit held Plaintiff has a right to any interest, "this court is bound by decisions of the state's intermediate appellate courts unless convinced that

6

the Michigan Supreme Court would decide the question differently." *United of Omaha Life Ins. Co. v. Rex Roto Corp.*, 126 F.3d 785 (6th Cir. 1997). Therefore, the Court must apply the result of *Kemerer* in interpreting Michigan law. *Kemerer* dictates Plaintiff has no property right to any interest earned on his principal while it was abandoned and in the UPP. Because Plaintiff has not alleged facts that, taken as true, establish he has a property right to any such interest, his claims regarding interest are not plausible on their face. Accordingly, dismissal is appropriate for these claims. Count V of Plaintiff's second amended complaint for not receiving due process before being deprived of interest earned on his principal is DISMISSED WITH PREJUDICE.

The Court will apply the law of the case doctrine to Plaintiff's second amended complaint with the aspects of the Sixth Circuit's opinion not affected by the Appeals Court's decision. As a result, counts I-II of Plaintiff's second amended complaint for unconstitutional takings of interest and the principal against Defendant State of Michigan are DISMISSED WITHOUT PREJUDICE. Plaintiff's counts III-IV for unconstitutional takings of interest and the principal against Defendants Eubanks and Stanton are DISMISSED WITH PREJUDICE. Because the Sixth Circuit held Defendants Eubanks and Stanton are not entitled to qualified immunity on Plaintiff's due process claims, *O'Connor*, 83 f.4th at 1024, their motion for dismissal on this basis is DENIED.

### III. Summary Judgment Standard of Review

Federal Rule of Civil Procedure 56(a) provides, "[t]he court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." There is a genuine dispute of material

7

fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Courts look to the applicable substantive law to determine materiality as "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will . . . preclude . . . summary judgment." *Id.* The moving party has an initial burden to inform the court of the portions of the record "which it believes demonstrate the absence of a genuine dispute of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its burden, the non-moving party must make a "showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322-23. To do so, the non-moving party must present enough evidence "on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. Finally, the court "consider[s] all facts and inferences drawn therefrom in the light most favorable to the nonmovant." *City of Wyandotte v. Consol. Rail. Corp.*, 262 F.3d 581, 585 (6th Cir. 2001).

**IV.     Legal Standard**

Courts in this Circuit undertake a "two-step analysis when considering claims for the violation of due process rights. The first step determines whether the plaintiff has a property interest entitled to due process protection. Second, if the plaintiff has such a protected property interest, 'this court must then determine what process is due.'" *Mitchell v. Fankhauser*, 375 F.3d 477, 480 (6th Cir. 2004) (citations omitted) (quoting *Leary v. Daeschner*, 228 F.3d 729, 741-42 (6th Cir. 2000), *abrogated on other grounds by EOG Res., Inc. v. Lucky Land Management, LLC*, 134 F.4th 868, 883 (6th Cir. 2025)). Further, "[t]he predeprivation process need not always be elaborate, however; the amount of

8

process required depends, in part, on the importance of the interests at stake." *Leary*, 228 F.3d at 742.

## V. Analysis

### A. Whether Plaintiff has a Protected Property Interest

The Sixth Circuit found Plaintiff has a property right in the principal, and Defendants have not offered any state-law basis to revisit this holding. *See O'Connor*, 83 F.4th at 1022-23. The Court finds Plaintiff has a protected property interest in the principal and will turn to Defendants' claims that he was not deprived of that property interest and was afforded all process due regardless.

### B. What Process is Due

As far as his remaining claims, Plaintiff alleges his right to due process was violated first when his property was transferred by FMC and MMI to the UPP, and second when the principal was seized and used by the State. (ECF No. 40, PageID.460-63.) The first instance appears to allege the pre-deprivation process was inadequate, and the second alleges the post-deprivation process was too.

For the pre-deprivation claim, Defendants argue there was no due process violation and cite to *Anderson National Bank v. Luckett*, 321 U.S. 233 (1944), for support. (ECF No. 47, PageID.600-01.) There, the Court considered a Kentucky statute which required banks to turn where deposits became presumed abandoned after ten years of inactivity. *Anderson Nat. Bank*, 321 U.S. at 236-42. The statute also required banks to turn over to the state deposits that were presumed abandoned, provided administrative and judicial processes to have depositors' property claims determined, and allowed depositors to make demands for repayment or return from the state. *Id.* The statute

9

provided administrative and judicial processes to have property claims determined and notice was effectuated by banks posting reports of accounts that would be presumed abandoned on the courthouse door six weeks before the presumption attached and then were transferred to the State. *Id.* at 243-44. The Court held "it is within the constitutional powers of the state to protect the interests of depositors from the risks which attend long neglected accounts, by taking them into custody when they have been inactive so long as to be presumptively abandoned," and that the depositors were "not deprived of their property by the surrender of their bank accounts to the state" as long as "the requirements of procedural due process" were met. *Id.* at 241, 243. The Court further held the notice was adequate in part by the publication of the statute itself because it informed "all depositors of banks within the state[] of the conditions on which the balances of inactive accounts will be deemed presumptively abandoned[] and their surrender compelled," and "[a]ll persons having property located within a state . . . must take note of its statutes affecting the control or disposition of such property . . . ." *Id.* at 243. The notice was also held sufficient on the basis of posting reports on the courthouse door because that was "an ancient [method of giving notice] and . . . time-honored in Kentucky" and was a procedure "customary and well known in the community . . . ." *Id.* at 244.

  *Anderson National Bank* is distinguishable for several reasons. First, there, the depositors took affirmative action to deposit money from their custody into a bank account. Whereas here, Plaintiff appears to have been unaware in each instance that he had property held by another that would eventually be transferred to the State. The aggrieved in *Anderson National Bank* chose to have their property held by another. Not so here, and that makes a difference in deciding the due process implications of

10

transferring custody from a private holder to the state. One can more reasonably be expected to be aware of statutes governing their bank deposits and accounts than those governing property they are not aware of. Second, here, the UUPA deems property presumptively abandoned after three years of being unclaimed while in the holder's custody, and the State steps in as owner when the property is transferred to its custody. *See Kemerer*, at *9. The statute at issue in *Anderson National Bank* allowed longer inactivity before the property was presumed abandoned and the state did not immediately step in as owner. 321 U.S. at 236-42. Further, here, the State does not simply substitute itself as holder as Defendants claim — it does much more. (ECF No. 47, PageID.599-600.) The State is allowed conduct sales of property in the UPP, deposit it in its general fund, and earn interest on property in its custody. *Kemerer*, at *9. The statutes' respective impact on property interests differ, and *Anderson National Bank* is not persuasive.

Defendants have not shown that the transfer of Plaintiff's property to the UPP was not a deprivation of his protected right nor that statutory notice was sufficient as due process for that event.

For Plaintiff's post-transfer claim, Defendants argue there was no deprivation of a property interest because he could always re-establish ownership and receive the same value the State did when it took custody by filing a successful claim under the UUPA. (ECF No. 47, PageID.603-04.) Defendants miss the point. Plaintiff has a protected property interest in his principal, and he is deprived of the enjoyment of that interest while the State holds it. The fact the State provides an avenue for the deprivation to be temporary lessens the severity, but that does not eliminate the deprivation. Further, the UUPA does not just deprive Plaintiff of his right to custody over his property, it deprives

11

him of ownership too. *See* ECF No. 47, PageID.603 (the UUPA "grants the former owner an opportunity to later reclaim an interest in and reestablish ownership of that abandoned property by filing a successful claim"). It cannot be that the UUPA gives custody, albeit where the original owner did not have any, and ownership of property to the State and the former owner has not been deprived of a protected interest in that property. Of course, that is not the end of the inquiry because states can deprive individuals of property if they are afforded "due process of law." *See* U.S. Const. amend. XIV.

Defendants argue the notice was adequate for several reasons, including that Plaintiff received the forms of notice required by the UUPA. (ECF No. 47, PageID.607-08.) As for what notice he received, Plaintiff points to his declaration statement that he never received notice from either FMC or MMI or any State official that his property would be presumed abandoned and transferred to the State. (ECF Nos. 49, PageID.643; 49-20.) Defendants point to Defendant Stanton's affidavit statement that both holders "indicated" they had complied with the UUPA's notice requirements in reporting the property to the State, and that the State has complied with its obligations to issue notice every six months in a newspaper circulated statewide and maintain the website discussed above. (ECF Nos. 47, PageID.607; 47-1.) Thus, there is a genuine dispute as to what notice Plaintiff received.

Plaintiff received actual notice in some way as evidenced by him discovering his property was in the UPP. Defendants argue this shows the notice designed by the UUPA is sufficient. (ECF No. 47, PageID.608.) Similarly, Defendants argue Plaintiff received statutory notice of the UUPA's operation by its publication, and this satisfies due process. *Id.* at 607. However, where it took almost twenty years for Plaintiff to find out he had

property in the UPP, the Court cannot conclude on summary judgment that such evidence shows the UUPA's notice requirements satisfy due process. As discussed above, Plaintiff's rights to not just custody but also ownership of his property are impacted by the UUPA. Statutory notice alone is not sufficient under such circumstances.

Additionally, Defendants argue Plaintiff received due process because the UUPA granting a right and process for original owners to reclaim their property also suffices as the process due to original owners. (ECF No. 47, PageID.606.) As Defendants put it, "Michigan's UUPA provides all the process that is due." *Id.* As an initial matter, the Court has warned against "defin[ing] [the property right] by the procedures provided for its deprivation." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) (explaining "minimum [procedural requirements [are] a matter of federal law, they are not diminished by the fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action") (quotation marks omitted) (quoting *Vitek v. Jones*, 445 U.S. 480, 491 (1980))). For support, Defendants cite to *Hall v. State*, 908 N.W.2d 345 (Minn. 2018). (ECF No. 47, PageID.606.) There, the Minnesota Supreme Court considered a challenge to that state's unclaimed property law. *Hall*, 908 N.W.2d, 345. The statute and challenges in *Hall* are similar to those here. *See id.* at 351-56. Thus, where that court held the statute's procedures for notice and recovery of unclaimed property satisfied due process requirements, so too Defendants urge should the UUPA's. *See id.* at 358-60. However, there are important differences between Minnesota's law and the UUPA. The *Hall* court noted Minnesota's unclaimed property act and program is not an escheatment scheme where the state acquires ownership of unclaimed property. *Id.* at 356 (stating "[t]he Act is similar to the Indiana statute in that the

13

State does not claim to 'escheat' the property of the owners or gain title thereof. The State simply becomes the custodian of the unclaimed property until the owner of the property reclaims it"). On the record before the Court at this stage, the Court sees no reason to treat Michigan's UUPA the same as Minnesota's when the State tells the Court they are not. *See Anderson Nat'l Bank*, 321 U.S. at 246 ("[t]he fundamental requirement of due process is an opportunity to be heard upon such notice and proceedings as are adequate to safeguard *the right for which the constitutional protection is invoked*") (emphasis added). As stated above, the UUPA impacts rights to custody and ownership. Defendants have not met their burden to show they are entitled to judgment as a matter of law that the process Plaintiff received and what is required by the UUPA satisfies due process.

## VI.     Conclusion

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Defendants' motion for summary judgment or alternatively dismissal. (ECF No. 47.) Plaintiff's claims for unconstitutional takings against Defendant State of Michigan (counts I-II) are DISMISSED WITHOUT PREJUDICE. Plaintiff's claims for unconstitutional takings of interest and the principal against Defendants Eubanks and Stanton (counts III-IV) are DISMISSED WITH PREJUDICE. Plaintiff's claim for not receiving due process before being deprived of interest earned on his principal (count V) is DISMISSED WITH PREJUDICE. Counts VI and VII, only as they relate to principal property, remain.


SO ORDERED.

                                                  s/ Nancy G. Edmunds
                                                  Nancy G. Edmunds
                                                  United States District Judge

Dated: September 3, 2025

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 3, 2025, by electronic and/or ordinary mail.

                s/ Marlena Williams
                Case Manager