UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENNIS O'CONNOR,
and all those similarly situated,

    Plaintiffs,

v.

RACHAEL EUBANKS, TERRY STANTON,
and the STATE OF MICHIGAN,

    Defendants.
_____/

Case No: 21-12837

Honorable Nancy G. Edmunds
Magistrate Judge Patricia T. Morris

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR RECONSIDERATION [55] AND DENYING AS MOOT PLAINTIFF'S MOTION TO REOPEN CLASS DISCOVERY [53]**

Defendants move for reconsideration of the Court's opinion and order granting in part and denying in part Defendants' motion for summary judgment or alternatively dismissal. (ECF No. 55.) Pursuant to E.D. Mich. L.R. 7.1(f)(2) and (h)(3), the Court did not order oral argument because it would not significantly aid the decision process. For the reasons explained below, the motion for reconsideration is GRANTED. Because this results in dismissal of all remaining claims, Plaintiff's pending motion to reopen class discovery (ECF No. 53) is DENIED AS MOOT.

**I.    Background**

This case is a putative class action concerning Michigan's Uniform Unclaimed Property Act ("UUPA"). The UUPA provides that property left in the possession of a third party (known as the "holder") and unclaimed for more than three years after it becomes payable is "presumed abandoned." *Kemerer v. State*, --- N.W.3d ---, 2024 WL 4609911,

1

at *6 (Mich. Ct. App. 2024) (quoting Mich. Comp. Laws § 567.223(1)). Property deemed abandoned under the UUPA may be transferred to the State of Michigan. *Id.* at *7. The statute also provides a procedure for the original owners of unclaimed property to file a claim with the state and have the property returned to them. *Id.* *7-8.

Plaintiff alleges, *inter alia*, violations of the Takings Clause and Due Process Clause related to the statutory abandonment of two pieces of unclaimed property totaling $174.50. (ECF No. 40.) The properties were held by two third parties until it was turned over to the state treasury pursuant to the UUPA. (ECF No. 47, PageID.588-59.) Although the state ultimately remitted the entire value of the unclaimed properties to Plaintiff (ECF No. 47-1, PageID.616), Plaintiff still claims that his constitutional rights were violated because he did not receive adequate notice before and after the properties were transferred to the state.

This Court initially dismissed the case following a report and recommendation from a magistrate judge. (ECF No. 28.) The dismissal was affirmed in part and reversed in part by the Sixth Circuit. *See O'Connor v. Eubanks*, 83 F.4th 1018 (6th Cir. 2023), *cert. denied*, 145 S. Ct. 371, 220 L. Ed. 2d 139 (2024), and *cert. denied*, 145 S. Ct. 372, 220 L. Ed. 2d 139 (2024). The Sixth Circuit ruled that Plaintiff's claims under the Takings Clause were barred by qualified immunity, but qualified immunity did not preclude Plaintiff's claims under the Due Process Clause. *Id.* at 1021. On remand, the Court stayed class discovery. After individual discovery, Defendants moved for summary judgment or dismissal (ECF No. 47), which the Court granted in part and denied in part (ECF No. 52).

Pertinent to the instant motion for reconsideration, the Court's summary-judgment order dismissed Plaintiff's takings claims, but a portion of the due-process claims

2

remained. Plaintiff's claims for due-process violations related to interest earned on the property while the State of Michigan possessed it were foreclosed by the Michigan Court of Appeals' recent decision in *Kemerer*. (*Id.* at PageID.865) ("*Kemerer* dictates Plaintiff has no property right to any interest earned on his principal while it was abandoned and in the UPP.").[1] The Court further held, however, that Plaintiff's claims for deprivation of the *principal* amount of the unclaimed properties survived. (*Id.* at PageID.867-72.) The Court found that (1) there was a question of fact as to whether Plaintiff received actual notice of the transfer of the properties; and (2) the statutory mechanisms for providing notice to him, and Plaintiff's notice of the statute itself, were not themselves sufficient to satisfy due process. (*Id.*) Immediately following the Court's order, Plaintiff moved to re-open class discovery. (ECF No. 53.)

Defendants have now moved for reconsideration of the court's summary-judgment order to the extent that it permitted Plaintiff's due-process claims to proceed. (ECF No. 55.) The gravamen of the reconsideration motion is that the Court's prior ruling is inconsistent with *Texaco, Inc. v. Short*, 454 U.S. 516 (1985), which upheld an Indiana law that extinguished mineral rights after a period of nonuse. After the Court issued an order permitting a response to the motion for reconsideration, Plaintiff responded. (ECF No. 56, 58.) Defendants also submitted a response to the motion to reopen class certification. (ECF No. 54.)

---

[1] Much of Plaintiff's response to the motion for reconsideration seems to take issue with the Court's decision regarding the alleged deprivation of interest payments allegedly earned on the unclaimed properties. Since Plaintiff did not timely file his own motion for reconsideration, the Court will not revisit this aspect of the earlier order.

3

II.   **Motion for Reconsideration**

   a. **Legal Standard**

"Motions for reconsideration of non-final orders are disfavored." E.D. Mich. L.R. 7.1(h)(2). Such a motion may be granted only if the outcome of the prior decision would be changed by: (A) a mistake of the court "based on the record and law before the court at the time of its prior decision" (B) "[a]n intervening change in controlling law"; or (C) "new facts [that] could not have been discovered with reasonable diligence before the prior decision." *Id.* "A motion for reconsideration is not intended as a means to allow a losing party simply to rehash rejected arguments or to introduce new arguments." *Southfield Educ. Ass'n v. Bd. of Educ. of Southfield Pub. Schs.*, 319 F. Supp. 3d 898, 901 (E.D. Mich. 2018). On the other hand, the Court will consider a motion for reconsideration if it highlights "factual and legal matters that the Court may have overlooked." *Carter v. Robinson*, 211 F.R.D. 549, 550 (E.D. Mich. 2003) (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)).

   b. **Analysis**

Defendants argue that the transfer of Plaintiff's property to the state did not violate due process. Defendants claim that, under *Texaco*, Plaintiff was not required to have actual or individualized notice before being deprived of the property through statutory abandonment because plaintiff had "statutory notice"—in other words, it was sufficient that Plaintiff was presumed to have notice of UUPA and its effect on any unclaimed property he might own. (ECF No. 55, PageID.904.)  The Court's summary-judgment order rejected the "statutory notice" theory but did not address *Texaco* in doing so. (ECF No.

4

52, PageID.870-71.) The Court will therefore re-assess the statutory notice argument in light of *Texaco*.

*Texaco* concerned an Indiana statute under which mineral rights would be automatically extinguished after 20 years of non-use—thus reverting a property's mineral rights to the surface owner—unless the owner filed a statement of claim in the local recorder's office within two years of the statute's passage. *Texaco*, 454 U.S. at 518-20. "The statute [did] not require that any specific notice be given to a mineral owner prior to a statutory lapse of a mineral estate." *Id.* at 520. The appellants in *Texaco* claimed that this statute violated due process in two ways: (1) that "the State of Indiana did not adequately notify them of the legal requirements of the new statute"; and (2) that the mineral rights could not be extinguished without notice from the surface owner. *Id.* at 531. As to the first argument, the Supreme Court ruled that the state's passage of a statute was itself sufficient notice that the property right might be extinguished. "It is well established that persons owning property within a State are charged with knowledge of relevant statutory provisions affecting the control or disposition of such property." *Id.* at 532. The Court also rejected the theory that due process required the mineral rights holders to be notified before their rights were extinguished. "[I]t has never been suggested that each citizen must in some way be given specific notice of the impact of a new statute on his property before the law may affect his property rights." *Id.* at 536. Where a "rule of law uniformly affecting all citizens… establishes the circumstances in which a property interest will lapse through the inaction of its owner," the owner was not required to receive "advance notice before such a rule of law may operate." *Id.* at 537.

5

*Texaco* also distinguished between abandonment of a property interest by operation of law and a final adjudication of ownership. While a proceeding to adjudicate the rights of a property owner, such as a quiet-title action, may require individualized notice and an opportunity to be heard, the same requirements did not apply to the "self-executing feature of the Mineral Lapse Act." *Id.* at 534-35. In support, the Court observed that *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950), another due process case, required notice and an opportunity to be heard before an "'adjudication' [of property rights] that is 'to be accorded finality.'" *Texaco*, 454 U.S. at 535. But "*Mullane* itself distinguished the situation in which a State enacted a general rule of law governing the abandonment of property." *Id.* at 535. Thus, a lesser degree of notice was required for a statute that deemed an interest in property abandoned or extinguished than would be required before a judicial proceeding to adjudicate the same property rights.

Other courts have applied *Texaco* and upheld similar unclaimed property statutes to Michigan's against due-process challenges. These cases hold that a lesser degree of notice and process is required for an automatic transfer of property by operation of law than would be required for a final adjudication of rights in the property. For instance, the Supreme Court of Oklahoma relied on *Texaco*'s reasoning to uphold Oklahoma's version of the UUPA in the face of a due process challenge:

> Much like the mineral lapse statute at issue in *Texaco, Inc.*, the [Oklahoma] UUPA sets conditions under which types of property are presumed abandoned, based primarily on the failure of the owner to take certain actions such as communicating with the holder…. Unlike in *Texaco, Inc.*, this process does not result in the termination of the owner's interest in the property. Even if it did, however, the holding in *Texaco, Inc.*, illustrates that due process requirements of notice and an opportunity to be heard do not apply to automatic termination of a property right through operation of statute based on an owner's failure to fulfill certain conditions. Rather, the requirements of due process would apply only to a proceeding brought to

6

> adjudicate if that right did in fact terminate…. It follows by extension that due process is not offended by the automatic transfer of abandoned property into the custody of the State Treasurer.

*Dani v. Miller*, 374 P.3d 779, 796 (2016). The Supreme Court of Minnesota likewise relied on *Texaco* in holding that Minnesota's unclaimed property statute satisfied due process requirements. *Hall v. State*, 908 N.W.2d 345, 359-60 (Minn. 2018).

Here, under *Texaco*, due process did not require that Plaintiff receive individualized notice before his property was presumed abandoned. Although Plaintiff would be entitled to individualized notice and an opportunity to be heard for a final adjudication of his rights in the abandoned property, such process was not required before the property was deemed abandoned by operation of law. *See Texaco*, 454 U.S. at 534-35. The distinction between abandonment by law and a final adjudication of rights is arguably more significant in this context because, unlike the mineral interests in *Texaco*, the unclaimed property in this case remained reclaimable even after Plaintiff's title in the property was extinguished. *See Hall*, 908 N.W.2d at 360 ("The type of notice required for a final adjudication of property rights is more stringent than that required to inform an owner of presumed abandoned, but still reclaimable, property.").[2] Accordingly, it is immaterial that Plaintiff claims he never received actual, individualized notice before the property was deemed abandoned.

---

[2] This Court distinguished *Hall* in the summary judgment order because the State of Minnesota only took possession of the property and held it in trust until it was claimed, whereas the State of Michigan purports to take title to the property by escheat. (ECF No. 52, PageID.871-72.) The statute in *Texaco*, however, was valid even though it completely extinguished a landowner's property rights and transferred them to another owner. Thus, if *Texaco* is treated as controlling under these facts, the fact that the state purports to take title to the abandoned property (rather than possession) does not make the statute invalid.

True, the Sixth Circuit stated during the prior appeal in this case that Plaintiff's claims survived dismissal because "[p]recedent clearly establishes that the government must give at least some notice before taking property… [and] here, [Plaintiff] alleges the government provided none." *O'Connor*, 83 F.4th at 1023 (citing *Mullane*, 339 U.S. at 313). But, at the same time, the court expressly "d[id] not decide the kind of notice and process that the Due Process Clause requires here" and left that issue for this Court on remand. *Id.* at 1023 n.5. For the reasons discussed above, the Court finds that the Due Process Clause was satisfied because Plaintiff received at least the same degree of pre-deprivation notice and process as the mineral-rights holders did in *Texaco*. As in *Texaco*, due process only required that Plaintiff have notice of the statute itself, which was imputed to him upon the statute's passage. *See Texaco*, 454 U.S. at 532 ("It is well established that persons owning property within a State are charged with knowledge of relevant statutory provisions affecting the control or disposition of such property.").

Indeed, Plaintiff received more notice and process than *Texaco* requires. The state publishes a notice of new, abandoned properties received by the state treasury department every six months and maintains a website cataloging unclaimed properties pursuant to Mich. Comp. Laws § 567.239. (ECF No. 47-1, PageID.616.) Plaintiff also received actual notice of the abandoned property (albeit belatedly). (*See* ECF No. 49-20, PageID.797.) Upon receiving this notice, Plaintiff was entitled to file a claim to re-establish title in his unclaimed property under Mich. Comp. Laws § 567.245. Plaintiff did so, and had his property returned to him. (ECF No. 49-20, PageID.797-98.)

Plaintiff urges that this case is different because "[u]nlike the mineral-rights owners in *Texaco*, [Plaintiff] did not voluntarily forfeit or knowingly neglect a known asset." (ECF

8

No. 58, PageID.924.) *Texaco*, however, did not turn on whether the mineral-rights holders knew about their interests before the rights were extinguished—the opinion does not mention whether they did or not. Relatedly, Plaintiff argues that *Texaco* only "excused notice for *voluntary* abandonment of unknown/intangible rights to private parties after dormancy," whereas the "UUPA involves *involuntary* transfer of known tangible funds (bank accounts) by statute to the government, without ascertainable-owner notice." (*Id.* at PageID.925) (emphases in original). But *Texaco* ruled that a statute may deem an interest in property abandoned "upon the failure of its owner to take reasonable actions imposed by law," and it did not distinguish between a voluntary or an involuntary failure. *Texaco*, 454 U.S. at 530. To the extent that Plaintiff's knowledge or voluntariness distinguishes him from the mineral-rights holders in *Texaco*, these distinctions do not make a difference.[3]

Plaintiff received the notice and process to which he was entitled under *Texaco*. Therefore, the motion for reconsideration is GRANTED, and Plaintiff's remaining claims are DISMISSED.

### III.    Motion to Reopen Class Discovery

Plaintiff also moves to reopen class discovery. (ECF No. 53.) Since Plaintiff's remaining claims are dismissed, Plaintiff's discovery motion is DENIED AS MOOT.

---

[3] Plaintiff also relies on *Maron v. Chief Fin. Officer of Fla.*, 136 F.4th 1322 (11th Cir. 2025) for the proposition that "when assessing whether an escheatment statute passes constitutional muster, courts must examine whether the [unclaimed property] statute gives the owner adequate notice and opportunity to be heard." (ECF No. 58, PageID.923-24.) That case does not compel a different result because, for the reasons discussed above, Plaintiff was afforded adequate process under *Texaco*.

**IV.     Conclusion**

For the foregoing reasons, Defendants' motion for reconsideration is GRANTED and the motion to open class discovery is DENIED AS MOOT.

SO ORDERED.

                                            s/Nancy G. Edmunds
                                            Nancy G. Edmunds
                                            United States District Judge

Dated: December 3, 2025

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on December 3, 2025, by electronic and/or ordinary mail.

                                            s/Marlena Williams
                                            Case Manager